

**ORDERED in the Southern District of Florida on May 10, 2026.**

**Mindy A. Mora, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Case No. 25-14568-BKC-MAM
Chapter 11

**GREEN TERRACE CONDOMINIUM
ASSOCIATION, INC.,**

Debtor.                                              /

**FINAL ORDER (I) AUTHORIZING AND APPROVING SALE OF REAL
PROPERTY LOCATED AT 2800 GEORGIA AVENUE, WEST PALM
BEACH, FLORIDA 33405 AND ASSOCIATED PERSONAL PROPERTY
TO BIG BEAR ENTERPRISES, LLC, FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II)
<u>GRANTING OTHER RELATED RELIEF</u>**

**THIS CAUSE** came before the Court on May 8, 2026 at 9:30 a.m. (the "Hearing") for

hearing pursuant to this Court's March 12, 2026 *Order Approving (A) Bidding Procedures, (B) the*

*Form and Manner of Notices, (C) Purchase and Sale Agreement with Stalking Horse Bidder,*

*Including Purchaser Protections and (D) Scheduling an Auction, a Sale Hearing, and Establishing Dates and Deadlines Related Thereto* (Dkt. No. 215) (the "Bidding Procedures Order"),[1] to authorize and approve the sale of the (i) real property located at 2800 Georgia Avenue, West Palm Beach, Florida bearing Parcel Control Number 74-43-43-33-41-000-0010 (the "Real Property"), and (ii) all rights, privileges, easements, and appurtenances pertaining to the Real Property, any improvements located thereon, any personal property rights to any personal property located at the Real Property, any intangible property rights relating to the Real Property or the Association, and all entitlements appurtenant thereto (collectively with the Real Property, the "Property"), to the Stalking Horse Bidder, Big Bear Enterprises, LLC (the "Buyer" or "Big Bear Enterprises"), as the only bidder for the Property. The Court:

    (a) having reviewed and considered

        i.    the Bidding Procedures Order;

        ii.    *Chapter 11 Trustee, Daniel J. Stermer's Motion for Entry of (1) an Order Approving (A) Bidding Procedures, (B) the Form and Manner of Notices, (C) Purchase and Sale Agreement with Stalking Horse Bidder, and (D) Scheduling an Auction, a Sale Hearing, and Establishing Dates and Deadlines Related Thereto; (2) an Order (A) Authorizing the Sale of the Debtor's Real Property, Free and Clear of Liens, Claims, and Encumbrances, (B) Granting the Purchaser the Protections Afforded to a Good Faith Purchaser, and (C) for Related Relief* (Dkt. No. 206) (the "Sale Motion");

---

[1] All capitalized terms not otherwise defined in this Final Sale Order shall have the meanings ascribed to them in the Bidding Procedures Order.

iii.   The Trustee's *Amended Notice of Filing of Reports Regarding Condition of Condominium Buildings* filed in support of the Sale Motion (Dkt. No. 224) (the "Supplement");

iv.   The Trustee's *Notice That No Qualified Bids Were Received, Cancellation of Auction on April 29, 2026* (Dkt. No. 229) (the "Notice of No Bids");

v.   This Court's *Order Granting Chapter 11 Trustee's Motion for Summary Judgment* against Boken (Dkt. No. 19 in Adv. Proc. No. 26-1096 (Bankr. S.D. Fla.)) (the "Summary Judgment Order");

vi.   This Court's *Order Granting Chapter 11 Trustee, Daniel J. Stermer's Application for Employment of Fisher Auction Co., Inc. and Avison Young Florida LLC as Co-Real Estate Brokers for the Trustee Effective as of August 24, 2025* (Dkt. No. 130) (the "Broker Employment Order"); and

vii.   the Court file;

(b) having noted from the Notice of No Bids that Big Bear Enterprises as the Stalking Horse Bidder was the successful bidder for the Property and the condominium units pursuant to the Stalking Horse Bid in the amount of $13,200,000 plus a 5% Buyer's Premium for a total sale price of $13,860,000.00, with such purchase price subject to increase to up to $13,475,000 based on the total number of condominium units sold in excess of 64 units (with a corresponding increase to the amount of the 5% Buyer's Premium) for a total maximum sale price of $14,148,750;

(c) having noted the representation of Big Bear Enterprises that it is not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31) and (i) has no affiliations of any type with the Debtor and/or any of the Debtor's principals, and (ii) has not engaged in

any collusion, bad faith conduct, or other activities prohibited by the Bankruptcy Code in connection with its bidding for the Property;

(d) having noted the appearance of (i) the Trustee, (ii) the Trustee's co-brokers, Fisher Auction Co., Inc. and Avison Young Florida LLC (collectively, the "Co-Brokers"), (iii) counsel for the City of West Palm Beach, and (iv) counsel for Boken, Bailynson, and WPAC;

(e) having noted the appearance of, and having heard and considered argument from (i) Trustee's counsel; (ii) counsel for secured creditor the City of West Palm Beach; (iii) counsel for creditor Boken; (iv) trial counsel for the United States Trustee; and (v) counsel for the successful bidder, Big Bear Enterprises, LLC;

(f) having noted and overruled the *Objection* to the Sale Motion filed by Boken (Dkt. No. 210) (the "Boken Objection");

(g) having been advised by Trustee's counsel and having noted from the Notice of No Bids that there were no competing Qualified Bidders and thereby no Auction was held;

(h) having been advised by Trustee's counsel that:

    i. the Co-Brokers sent out emails to 19,209 potential interested parties, with 6,738 potentially interested parties viewing those communications;

    ii. the Co-Brokers identified 2,709 potential unique prospects;

    iii. 953 different prospects reviewed the executive summary for the purchase opportunity;

    iv. there were 96 executed confidentiality agreements;

    v. there were 255 page views on CREXi;

vi.    there were multiple different groups that attended tours of the Real Property; and

(i)  having been advised that pursuant to the terms of the Bidding Procedures Order and the Purchase Agreement, Big Bear Enterprises has tendered to the Trustee a good faith deposit of $660,000.00 (the "Big Bear Enterprises Deposit"), which Big Bear Enterprises Deposit is non-refundable pursuant to the terms of the Bidding Procedures Order and the Purchase Agreement unless the Trustee is unable to close;

(j)  having heard and accepted the Trustee's proffer at the Hearing;

(k) having determined that the relief authorized herein is in the best interests of this Estate;

(l)  having been advised by Trustee's counsel that all known parties that might claim a lien, claim, encumbrance, or interest in the Real Property based on the public records and the title commitment obtained by Big Bear Enterprises, including, but not limited to (i) the City of West Palm Beach (the "City") and (ii) Boken (collectively, the "Asserted Secured Creditors") were properly served with the Bidding Procedures Order and thus, had actual notice of the Hearing (*see* Dkt. No. 218);

(m) having been advised that the City consents to the sale and the relief authorized herein and having previously determined that the asserted liens of Boken are subordinate to those of the City (Dkt. No. 19 in Adv. Proc. No. 26-1096), and having been advised by Trustee's counsel that the sale proceeds are insufficient to satisfy the liens of the City in full; and

being otherwise fully advised in the premises; and for the reasons set forth on the record at the Hearing, which are incorporated herein by reference,

**IT IS FOUND AND DETERMINED THAT:**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court and jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The relief and transaction subject of: (a) the Sale Motion; (b) the Bidding Procedures Order; (c) the Purchase Agreement; and (d) this Final Sale Order, is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N), (K), and (O). The statutory predicates for the relief authorized herein are Sections 105(a) and 363 and 1146 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004 and 9014.

3.      Except where otherwise noted, the following factual findings are based on the Trustee's proffer at the Hearing, which was accepted without any objection.

## I.    Relevant Case Background

4.      This case case commenced with the filing of a voluntary Chapter 11 petition by the corporate debtor, Green Terrace Condominium Association, Inc. (the "Debtor") on April 25, 2025. Dkt. No. 1.

5.      The Debtor is a Condominium Association that holds record title to the Real Property, which consists of a parcel with clubhouse and pool located at 2800 Georgia Avenue, West Palm Beach, Florida 33405. Dkt. No. 28, page 4.  This parcel was purchased by the Association on or about April 14, 2004, decades after the Association was established.  Previously, the parcel was leased to the Association by the condominium developer pursuant to a long-term lease agreement.

6.      On June 17, 2026 (the "Appointment Date"), the Court entered an order confirming the Trustee's appointment as Chapter 11 trustee of the Debtor's Estate. Dkt. No. 84.

7. On the Appointment Date, the Debtor's affairs were in disarray, assessments were simply not being paid, and the condominium buildings were in disrepair, with exigent repair needs.

8. Since then, the Trustee's efforts (with the assistance of the new property manager and collection counsel) have resulted in hundreds of thousands of dollars in assessments being paid, but the condominium buildings continue to require expensive repairs.

9. The Trustee has engaged professionals to assess the condition of the property and has determined that rehabilitation is not feasible. Before rehabilitation work could begin, substantial special assessments would need to be paid in full by all of the unit owners of the condominium units (the "Unit Owners"), including Bailynson and his company WPAC, which already have over a million dollars in asserted unpaid assessments owing and which assert defenses to paying the assessments coming due during this bankruptcy case. In addition, the Debtor would need a reconstituted board to oversee the rehabilitation, but the Trustee is not aware of any Unit Owner(s) who are ready, willing, and able[2] to serve on the Debtor's board. Finally, the Debtor's current operations are insufficient to meet the Debtor's ongoing obligations and pay the asserted secured claims.

10. The Trustee has engaged in substantial communications with numerous Unit Owners regarding the sale. With the exception of Bailynson and WPAC, the responding Unit Owners have indicated they support the sale of the Property in conjunction with a sale of their units, rather than commencing a rehabilitation of the Property and condominium redevelopment and the corresponding special assessment that would be necessary to do so. To date, in excess of

---

[2] Kenneth Bailynson formerly served on the Debtor's board, but pursuant to a June 8, 2022 final order, was adjudicated ineligible for board membership (until such time as his civil rights have been restored for a five-year period at the time of seeking election) and correspondingly removed from the board. *See* Dkt. 66 at Ex. A.

75% of the units within the condominium association have signed agreements in support of the Sale of the Property and their condominium units.

A. **The Real Property**

11. The Real Property is more particularly described as:

> Commencing at the Northwest corner of the Northeast one-quarter of the Northeast one-quarter of Section 33, Township 43 South, Range 43 East, Palm Beach County, Florida, run thence South 0 degrees 36'30" East along the West line of said Quarter-Quarter Section, a distance of 877.8 feet; thence East 165.85 feet to the Point of Beginning; thence run East 105.4 feet; thence North 116.1 feet; thence West 69.0 feet; thence North 28.75 feet; thence West 50.0 feet; thence South 37.85 feet; thence East 13.6 feet; thence South 107.0 feet to the Point of Beginning.

12. Line 55 of the Debtor's Schedule A/B (Dkt. No. 28, Page 4) reflects the Debtor's ownership of the Property with a scheduled value of unknown. Accordingly, the Property is property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and subject to administration by the Trustee pursuant to 11 U.S.C. § 542.

13. A review of public records reflects that the Debtor acquired the Property from Toner Developers, Inc. ("Toner Developers") on or about April 14, 2004, via warranty deed. See Warranty Deed recorded at O.R. Book 16854, Page 1655-67.

14. Based upon information provided by the Estate's appraisers, B&D Appraisers & Consultants, Inc. d/b/a Aucamp, Dellenback & Whitney and Callaway Price, Inc., the value of the land underneath the condominium buildings value is substantial, while the buildings themselves evidenced deferred maintenance and do not contribute to the overall site value.

B. **The Personal Property**

15. There is a minimal amount of personal property located on the Real Property within the Clubhouse. This personal property consists of various items of small equipment and building

materials for use in replacing windows and other aspects of the condominium units, which could be moved by the Trustee if the Buyer wishes the Trustee to do so. The personal property is of limited value understanding that it was delivered in October 2012.

16. The personal property is property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and subject to administration by the Trustee pursuant to 11 U.S.C. § 542.

**C. The Sale Motion, the Retention of the Co-Brokers and the Sale Process**

17. As detailed in the Sale Motion, the Trustee has maintained the Debtor's business operations post-appointment in order to preserve the going concern value of the Debtor, but determined that while the operations currently appear to produce sufficient funds to meet ongoing, non-capital operational costs, the income from operations is insufficient to fund a rehabilitation of the condominium project or make any meaningful payments to creditors. As a result, the Trustee sought approval for a sale process, as further detailed in the Bidding Procedures Order and on the record at the Hearing.

18. As set forth in the Sale Motion, the Debtor is condominium association for a condominium project consisting of 84 condominium units. After consultation with the Unit Owners and an investigation of the Debtor and the condominium project, the Trustee determined that it was in the best interests of the Estate and the Unit Owners to seek to sell the Property jointly with the condominium units so as to maximize the value that could be obtained by the Estate and the Unit Owners.

19. As set forth in the Sale Motion, the Trustee believed it was in the best interest of the Estate to establish a process for selling the Property and the condominium units, retain highly experienced co-brokers to run the process, solicit bids for the sale of the Property and the

9

condominium units, conduct an auction sale, and establish dates for the approval of such sale as efficiently and expeditiously as possible.

20. Accordingly, on August 27, 2025, the Trustee filed his *Application for Employment of Fisher Auction Co., Inc. and Avison Young Florida LLC as Co-Real Estate Brokers for the Trustee Effective as of August 24, 2025* (Dkt. No. 119) (the "Broker Retention Motion"), and (i) on September 11, 2025, the Court entered an order granting the Broker Retention Motion (Dkt. No. 130).

21. The Broker Employment Motion provided for, among other things, a commission structure through a 5% buyer's premium, which shall be paid to Fisher Auction Co., Inc. and Avison Young Florida LLC by Big Bear Enterprises. Dkt. No. 119.

## II. The Auction and the Sale

22. Pursuant to the terms of the Bidding Procedures Order, the Court approved the form of Purchase Agreement with Big Bear Enterprises. Dkt. No. 215.

23. Pursuant to the terms of the Bidding Procedures Order, the Trustee was authorized to conduct the Auction on April 29, 2026 at 11:00 a.m. Dkt. No. 215.

24. As noted above and set forth on the record at the Hearing, the Trustee received no competing Qualified Bids (other than the Stalking Horse Bid). As such, the Auction was cancelled and the Trustee identified the bid by Buyer as the highest or otherwise best offer for the Property pursuant to the terms of the Bidding Procedures Order. The Trustee has provided reasonable and adequate notice of the cancellation of the Auction and of Big Bear Enterprises being designated the Successful Bidder pursuant to the terms of the Bidding Procedures Order.

25. Accordingly, Big Bear Enterprises was the winning bidder with a winning bid of $13,200,000.00 plus a 5% Buyer's Premium for a total sale price of $13,860,000.00, with the

purchase price subject to increase to up to $13,475,000 based on the total number of condominium units sold in excess of 64 units (with a corresponding increase to the amount of the 5% Buyer's Premium) (the "Overall Purchase Price"). Big Bear Enterprises did not have a buyer side broker.

26.     The Buyer intends to purchase the Property and the Minimum Required Units for the Overall Purchase Price pursuant to the Purchase Agreement (and separate purchase and sale agreements with each Unit Owner) in connection with an eventual termination of the Debtor, in line with that the value here is found in the underlying land and a potential redevelopment of the underlying property.   Accordingly, the Buyer is requiring that this Final Sale Order include findings regarding the rights it is purchasing relevant to the Debtor's declarations.

27.     The Purchase Agreement was not entered into, and the Sale is not being consummated for purposes of, hindering, delaying, or defrauding present or future creditors of the Debtor and/or the Estate. The Trustee and Big Bear Enterprises were each represented by separate and independent advisors through the negotiation of the terms of the Purchase Agreement.   All payments and other consideration to be made by Big Bear Enterprises in connection with the sale of the Property have been disclosed.   Neither the Trustee nor Big Bear Enterprises are proposing to consummate the sale fraudulently, for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code, under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or otherwise.

28.     Accordingly, Big Bear Enterprises is the successful bidder and has agreed to buy from the Trustee, and the Trustee has agreed to sell to Big Bear Enterprises, for the purchase price ($881,106.86 in cleared funds, plus the 5% Buyer's Premium (subject to increase by 6.6675% by any increase in the Overall Purchase Price based on the number of condominium units sold, with a corresponding increase in the 5% Buyer's Premium) (the "Purchase Price")) the Property, on the

11

terms and conditions set forth in the Purchase Agreement and this Final Sale Order **"AS-IS, WHERE-IS," and without representations or warranties of any type being given by the Trustee, or his agents, employees, representatives, attorneys, accountants, real estate brokers, auctioneers, and/or other professionals,** except as expressly set forth in the Purchase Agreement and this Final Sale Order.

### A. Service of the Bidding Procedures Order Which Set the Final Sale Hearing

29. Based upon this Court's review and judicial notice of docket of the case, including the Certificate of Service of (i) the Sale Motion (Dkt. No. 208), (ii) notice of hearing on the Sale Motion (Dkt. No. 209), and (iii) the Bidding Procedures Order (ECF No. 218), the Court finds that all parties entitled to receive notice (including the Unit Owners) received proper, timely, adequate, and sufficient notice of the Hearing in accordance with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and any other applicable notice requirements.

30. The Court finds that a reasonable opportunity to object or to be heard by all parties in interest with respect to the relief subject of: (a) the Sale Motion; (b) the Bidding Procedures Order; and (c) this Final Sale Order, has been afforded to all known interested persons and entities, and the Court finds that other than the Boken Objection, no timely objections were filed or made at the Hearing. The Court finds the Boken Objection to be of no merit.

### B. Other Findings

31. The transaction: (a) subject of (i) the Sale Motion, (ii) the Bidding Procedures Order, and (iii) the Purchase Agreement; and (b) authorized herein, reflects the proper exercise of the Trustee's sound business judgment, and constitutes a proper exercise of the Trustee's fiduciary duties.

32. Based on the Trustee's proffer at the Hearing and the proffer on behalf of Mr. Guy Rabideau for Big Bear Enterprises, neither of which was objected to, the Sale (defined below) was the result of a vigorously marketed sale process, and the Purchase Agreement and sale transaction was entered into by the parties without collusion, in good faith, and at arm's length, and both Big Bear Enterprises as the successful bidder has represented that it has no direct or indirect affiliation with the Debtor.

33. Accordingly, based on the Trustee's proffer at the Hearing and the proffer on behalf of Mr. Guy Rabideau for Big Bear Enterprises, neither of which was objected to, this Court finds that Big Bear Enterprises is a purchaser of the Property in good faith under 11 U.S.C. § 363(m), and as such, is entitled to the protections afforded thereby.

34. This Paragraph is based on the Trustee's proffer at the Hearing and the proffer on behalf of Mr. Guy Rabideau for Big Bear Enterprises, neither of which was objected to. Big Bear Enterprises is a purchaser in "good faith," as that term is used in the Bankruptcy Code and relevant decisions and is entitled to the protections of section 363(m) and (n) of the Bankruptcy Code with respect to the purchase of the Property. The sales process engaged in by the Trustee and the Buyer, including, without limitation, the negotiation and execution of the Purchase Agreement, was in good faith, based upon arm's length bargaining, without collusion or fraud of any kind and was substantively and procedurally fair to all parties in interest in all respects. Neither the Trustee nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Purchase Agreement or to the consummation of the Sale and transfer of the Property to the Buyer. The Buyer is purchasing the Property in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection

13

of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Property; (ii) the Buyer fully complied with all of the provisions of the Bankruptcy Code, the Bidding Procedures Order, and the Bidding Procedures; (iii) there was no fraud, collusion, or unfair dealing in connection with the bidding process and the sale of the Property; (iv) the Buyer has fully disclosed all of its connections with the Debtor; (v) all consideration to be paid or provided to the Trustee by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (vi) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto were in good faith and free from any collusion, fraud, or unfair dealing.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale, and the Buyer would not consummate the Sale without such protections.

36. Based on the Trustee's proffer at the Hearing and the proffer on behalf of Mr. Guy Rabideau for Big Bear Enterprises, neither of which was objected to, neither the Trustee nor Big Bear Enterprises have engaged in any conduct that would cause or permit the transaction contemplated by the Sale Motion, the Bidding Procedures Order, the Sale, and/or the relief authorized by this Final Sale Order, to be avoided under 11 U.S.C. § 363(n) of the Bankruptcy Code.

36. The sale of the Property outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Estate's creditors nor impermissibly dictates the terms of a liquidating plan or reorganization for the Estate.  The Sale does not constitute a *sub rosa* chapter 11 plan.

14

37. Based on the Trustee's proffer at the Hearing, which was not objected to, the Association can be terminated pursuant to Fla. Stat. section 718.117(2) because the total estimated cost of construction or repairs necessary to construct the intended improvements or restore the improvements to their former condition or bring them into compliance with applicable laws or regulations exceeds the combined fair market value of the units in the condominium after completion of the construction or repairs.

38. Based on the Trustee's proffer at the Hearing, which was not objected to, the Association can be terminated pursuant to Fla. Stat. section 718.118 due to the substantial damage to a substantial part of the condominium property.

39. Based on the Trustee's proffer at the Hearing, which was not objected to, each condominium declaration for Green Terrace Condominium, Phases I, II and III can be terminated pursuant to legal or equitable grounds other than a vote in favor of termination by 100% of the Unit Owners, including but not limited to waste or the involuntary buyout process provided for in the declarations once 75% of the total condominium units across Green Terrace Condominium vote in favor of termination.

40. Based on the Trustee's proffer at the Hearing, which was not objected to, the Minimum Required Units to be conveyed to Big Bear Enterprises to unilaterally effectuate the termination of the condominium declarations pursuant to such declarations is 100% of the condominium units; *provided*, *that* (i) upon closing of the Sale and the purchase of the condominium units that have committed to sell, Big Bear Enterprises shall hold a sufficient number of condominium units to commence the involuntary purchase option and buyout process for the remaining condominium units as provided for in Section 15.2 of the condominium declarations for

termination of each condominium and (ii) the record reflects that termination on the equitable grounds of waste may be sought under state law.

41. Based on the Trustee's proffer at the Hearing, which was not objected to, (i) should the termination of the condominium declarations be done pursuant to Section 15.2 of each condominium declaration, that upon Big Bear Enterprises' acquisition of the Property and the Minimum Required Units, the Buyer shall own a sufficient number of units to unilaterally vote to approve the proposed termination of each of the three (3) condominiums and the related condominium declarations pursuant to Section 15.2 of each condominium declaration and thereby have the purchase option to set forth in Section 15.2 of each condominium declaration to acquire any third party units and then terminate the applicable condominium declaration or (ii) upon the Buyer's acquisition of the Property and the condominium units being purchased in connection with Closing, the Buyer shall be entitled to unilaterally terminate each of the three (3) condominiums and the related condominium declarations pursuant to other legal or equitable grounds.

### C. Sale Free and Clear

42. As stated above, the Property is subject to asserted liens, claims, encumbrances or interests in favor of the City and Boken, with the secured claims of the City being both senior to those of Boken and in excess of the proceeds of the sale of the Real Property. The asserted liens, claims, encumbrances or interests of the City and Boken against the Real Property shall attach to the proceeds of the Sale with the same extent, validity, and priority as they attached to the Real Property, and subject to any claims and defenses the Trustee or other parties may possess with respect thereto.

43. Approval of the transaction: (a) contemplated in the Sale Motion and the Bidding Procedures Order; (b) detailed in the Purchase Agreement; and (c) authorized by this Final Sale

Order, is in the best interests of the Estate. Good and sufficient business justification for consummating the Sale pursuant to 11 U.S.C. § 363 has been established in that, among other things, the sale process conducted by the Trustee as required by § 363 has been fair, open, reasonable and vigorous, and because, among other things, the Sale Motion and the Bidding Procedures Order was served on all known parties-in-interest, thereby giving all known parties-in-interest the opportunity to bid and/or object.

44.     The Court finds that Big Bear Enterprises' Purchase Agreement for $881,106.86 in cleared funds, plus the 5% Buyer's Premium (subject to increase by 6.6675% by any increase in the Overall Purchase Price based on the number of condominium units sold, with a corresponding increase in the 5% Buyer's Premium), is the highest and best offer for the purchase of the Property.

45.     The Court finds that the sale price of $881,106.86 in cleared funds, plus the 5% Buyer's Premium (subject to increase by 6.6675% by any increase in the Overall Purchase Price based on the number of condominium units sold, with a corresponding increase in the 5% Buyer's Premium) for the purchase of the Property by Big Bear Enterprises constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code. The Court further finds that Big Bear Enterprises did not have a buyer side broker and thus, pursuant to the terms of the Broker Employment Order, the 5% Buyer's Premium shall be paid to the Co-Brokers. No other realtors or brokers shall be entitled to a commission in connection with the Sale to Big Bear Enterprises.

46.     Pursuant to the terms of the Sale Motion, the Bid Procedures Order, and the Purchase Agreement, the Court finds that both Big Bear Enterprises: (a) had sufficient opportunity to conduct their own due diligence prior to participating in the Auction; (b) have not relied upon any information or documentation provided by the Trustee or the Trustee's agents, employees, representatives, attorneys, accountants, real estate brokers, auctioneers, and/or other professionals,

including, but not limited to the Co-Brokers, in making the offers; and (c) understand that the sale of the Property is **"AS-IS, WHERE-IS," and without representations or warranties of any type being given by the Trustee, or his agents, employees, representatives, attorneys, accountants, real estate brokers, auctioneers, and/or other professionals**, but free and clear of any and all liens, claims, encumbrances and interests, except as expressly provided in the Purchase Agreement.

47.    Accordingly, the Court finds it reasonable and appropriate that the sale of the Property to Big Bear Enterprises shall be **"AS-IS, WHERE-IS," and without representations or warranties of any type being given by the Trustee, or his agents, employees, representatives, attorneys, accountants, real estate brokers, auctioneers, and/or other professionals**, but free and clear of liens, claims, encumbrances and interests, except as provided for in the Purchase Agreement.

48.    Not selling the Property free and clear of all liens, claims, encumbrances and interests would adversely impact the Estate, and a sale of Sale Property other than one free and clear of all liens, claims, encumbrances and interests would be of substantially less value to the Estate.

49.    As set forth in the Purchase Agreement, the Court further funds that there are no unexpired leases or executory contracts being assumed and assigned to the buyer, Big Bear Enterprises.

50.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Property, it is essential that the sale of the Property occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004(h).

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

51. To the extent that any of the findings of fact or conclusions of law set forth above may be considered orders of the Court, they are hereby incorporated herein by reference.

52. For the reasons set forth: (a) in the Sale Motion; (b) the Bid Procedures Order; and (c) on the record at the Hearing, which are incorporated herein by reference, the sale of the Property is **APPROVED** on the terms and conditions set forth in (i) the Purchase Agreement, which terms and conditions are incorporated herein by reference, and (ii) this Final Sale Order. Any and all objections to the Auction and the Sale, including, but not limited to the Boken Objection, are **OVERRULED**.

53. The sale of the Property to Big Bear Enterprises for the Purchase Price, $881,106.86 in cleared funds, plus the 5% Buyer's Premium (subject to increase by 6.6675% by any increase in the Overall Purchase Price based on the number of condominium units sold, with a corresponding increase in the 5% Buyer's Premium), in cleared funds, is hereby **APPROVED** pursuant to 11 U.S.C. § 363 on the terms and conditions set forth in the Purchase Agreement and this Final Sale Order (the "Sale").

54. Pursuant to the terms of the Purchase Agreement, Big Bear Enterprises is directed to pay the remainder of the Purchase Price, $221,106.86 (or such increased amount based on the total number of condominium units sold) in cleared funds, to the Trustee and the 5% Buyer's Premium to the Co-Brokers no later than ten (10) days after this Final Sale Order becomes final and non-appealable, which date may be extended by mutual agreement of the parties.

55. Upon timely receipt of the entirety of the Purchase Price from Big Bear Enterprises ($881,106.86), the Trustee, whether in his capacity as Trustee, is authorized, directed and empowered to fully perform under, consummate and implement the terms of the Sale, including

to facilitate the sale of the Minimum Required Units to Big Bear Enterprises in connection with the Purchase Agreement. Among other things, the Trustee is authorized and empowered to (i) provide a calculation of the sale proceeds allocable to each condominium unit being sold, taking into account an offset for the amount of any assessments owing against such unit and providing for the reallocation of such offsets across the condominium units being sold and (ii) deduct the Trustee's 3.1% compensation from the sale proceeds for each condominium unit being sold, which amounts shall be paid by Big Bear Enterprises to the Trustee. The Trustee is authorized to execute such documents, and take such actions, as he deems reasonable, necessary and/or desirable to consummate the Sale and transfer and convey the Property to Big Bear Enterprises, free and clear of all liens, claims, encumbrances and interests. Notwithstanding the foregoing: (a) an executed Trustee's Deed with respect to the Real Property; (b) an executed Trustee's Bill of Sale with respect to the Personal Property; (c) an owner's affidavit of possession and no liens; and (c) a copy of this Final Sale Order, shall be the only documents the Trustee is required to deliver to Big Bear Enterprises to consummate the Sale. The Property to be acquired by the Big Bear Enterprises under the Purchase Agreement shall be, as of the Closing Date (as defined in the Purchase Agreement) and upon the occurrence of the Closing (as defined in the Purchase Agreement), transferred to and vested in Big Bear Enterprises. Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estate's interest in the Property under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Property to Big Bear Enterprises.

56. In the event that Big Bear Enterprises fails to timely tender the remainder of the Purchase Price, the Trustee: (a) shall be entitled to retain Big Bear Enterprises' entire deposit ($660,000.00); and (b) shall have no further obligations to Big Bear Enterprises.

57. Pursuant to the terms of the Sale Motion, the Bidding Procedures Order, and the Purchase Agreement: Big Bear Enterprises shall be responsible for: (i) obtaining a title commitment and survey; (ii) obtaining title insurance from Big Bear Enterprises' chosen closing agent, Old Republic National Title Insurance Company ("Old Republic"); (iii) payment of all fees and costs related to the foregoing (other than the Trustee's attorneys' fees and costs); and (iv) the payment of all fees, costs and taxes arising from or related to the consummation of the sale and the transfer of the Property, including but not limited to, sales tax, and recording fees. In addition, the Trustee has selected Old Republic as the closing agent, which closing agent shall be compensated by Buyer.

58. **Pursuant to the terms of the Sale Motion, the Bidding Procedures Order and the Purchase Agreement, the Trustee's sale of the Property is free and clear of all liens, claims, encumbrances and interests, but otherwise "AS-IS, WHERE-IS," and without representations or warranties of any type being given by the Trustee, or his agents, employees, representatives, attorneys, accountants, real estate brokers, auctioneers, and/or other professionals, except as provided in the Purchase Agreement.**

59. At closing, the Trustee is authorized to pay, without further order of the Court: (a) all reasonable and customary closing expenses reflected on the HUD-1/settlement statement; and (b) any other items that the Trustee determines, in the sound exercise of his business judgment, are necessary to effectuate the sale and transfer of the Property pursuant to the terms of this Final Sale Order, free and clear of all liens, claims, encumbrances and interests. The Trustee is further

21

authorized, if he so chooses, to permit the closing agent to make the above authorized disbursements at closing and remit the net proceeds due to seller as reflected on the HUD-1/settlement statement to the Trustee, with such receipts and disbursements made by the closing agent to be recorded in the Estate's accounting records as if the Estate received the entirety of the sale proceeds and subsequently disbursed same. To the extent that he deems it necessary, desirable and/or appropriate, the Trustee is further authorized to transfer, by wire transfer, any deposits held in the Estate bank account to the closing agent in order to facilitate and/or streamline the closing process.

60.     At Closing: (a) the City and (b) Boken are each directed to execute all instruments and documents that the Trustee and the closing agent deem reasonable, necessary and/or desirable to release any liens, claims or encumbrances that each may possess against the Property.

61.     Pursuant to 11 U.S.C. § 363, the sale of the Property to Big Bear Enterprises is and shall be free and clear of all liens, claims (including any code enforcement claims and related fines and penalties for relating to the condition of the Property as of the Closing Date), encumbrances and interests of every kind and nature.  All persons and entities including, but not limited to, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests or claims of any kind or nature whatsoever against or in the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Property, or the transfer of the Property (collectively, the "Creditors"), hereby are forever barred, estopped, and permanently enjoined from asserting each of such persons' or entities' rights, liens, claims, encumbrances and interests against: (a) Big Bear Enterprises, or any

22

of its assets, property, successors or assigns; (b) the Property; (c) the Sale Proceeds; (d) the Trustee and his employees, agents, representatives and professionals; and (e) the Estate.

62. On or after the date that the Sale is consummated (the "Closing Date"), the Creditors are directed to execute such documents and take all other actions as may be necessary to release their liens, claims (including any code enforcement claims and related fines and penalties for relating to the condition of the Property as of the Closing Date), encumbrances or interests, if any, against the Property, as such liens, claims, encumbrances or interests may have been recorded or may otherwise exist, provided that the failure to do so will not affect the validity of the preceding Paragraph 51 above.

63. This Final Sale Order: (a) is and shall be effective as a determination that on the Closing Date, all liens, claims (including any code enforcement claims and related fines and penalties for relating to the condition of the Property as of the Closing Date), encumbrances and interests existing before the Closing Date against the Property have been unconditionally released, discharged and terminated, and that the conveyance of the Property has been effected; and (b) is and shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, recorders, registrars, administrative agencies, governmental departments, secretaries of federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their offices, or contract, to accept file, register or otherwise record or release any documents or instruments. In the event that any of the Creditors fail to timely execute instruments and documents necessary to permit the Trustee to convey marketable title to the Property to the buyer, the Trustee is authorized to execute such instruments and documents.

64. The terms of this Final Sale Order shall control over any inconsistent provisions in the Sale Motion, the Bidding Procedures Order, or the Purchase Agreement.

65. The terms and provisions of this Final Sale Order shall be binding in all respects upon: (a) the Trustee; (b) the Estate; (c) the Debtor; (d) Bailynson, (e) WPAC, (f) Boken; (g) Big Bear Enterprises; (h) the City; (i) all Creditors, including secured creditors; (j) all parties-in-interest; (k) any affiliates, assignees, successors of the foregoing; and (*l*) any and all affected third parties.

66. The Buyer is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtor and/or its estate including, but not limited to, any bulk sales law, successor liability, or similar liability. Neither the transfer of the Property to the Buyer, nor the fact that the Buyer is using any of the Property previously owned by the Debtor, will cause the Buyer, or any of its affiliates, to be deemed a successor in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

67. This Order and the Purchase Agreement shall be binding upon, enforceable against, and govern the acts of all persons including, without limitation, the Debtor and its Estate, the Buyer, its respective affiliates, transferees, successors, and permitted assigns, including, without limitation, all creditors of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons who may be required by

24

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Property. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on all parties in interest.

68. Acts performed by the Trustee and/or his agents, representatives and professionals, including but not limited to, Bast Amron LLP and YIPCPA, LLC d/b/a Yip Associates, pursuant to the relief authorized by this Final Sale Order, including but not limited to consummation of the Sale, will not and shall not give rise to any claims and causes of action which may or could be asserted against them arising from or related to the performance of their duties in connection with the Sale by any parties, including but not limited to: (a) the Debtor and its managers, members, agents, attorneys, employees, and/or representatives; (b) Big Bear Enterprises and its agents, attorneys, employees, representatives and/or assignees; (c) any and all creditors of the Debtor; (d) any and all parties-in-interest; and (e) any and all affected third parties, of any kind or nature whatsoever against: (a) the Trustee; and (b) the Estate, and their respective agents, representatives or professionals, including but not limited to, Bast Amron LLP and YIPCPA, LLC d/b/a Yip Associates, under the laws of the United States, or any state, territory or possession thereof, arising from or related to the transaction subject of: (a) the Sale Motion; (b) the Bidding Procedures Order; (c) the Purchase Agreement; or (d) the relief authorized by this Final Sale Order, whether scheduled or unscheduled, known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, except for claims of willful misconduct or gross negligence as determined by this Court.

69. Based on the Trustee's proffer at the Hearing, the Court makes the following legal findings:

a. each condominium declaration for Green Terrace Condominium, Phases I, II and III can be terminated pursuant to legal or equitable grounds other than a vote in favor of termination by 100% of the Unit Owners, including but not limited to waste or the involuntary buyout process provided for in the declarations once 75% of the total condominium units across Green Terrace Condominium vote in favor of termination;

b. the Minimum Required Units to be conveyed to Big Bear Enterprises to unilaterally effectuate the termination of the condominium declarations pursuant to such declarations is 100% of the condominium units; *provided*, *that* (i) upon closing of the Sale and the purchase of the condominium units that have committed to sell, Big Bear Enterprises shall hold a sufficient number of condominium units to commence the involuntary purchase option and buyout process for the remaining condominium units as provided for in Section 15.2 of the condominium declarations for termination of each condominium and (ii) the record reflects that termination on the equitable grounds of waste may be sought under state law; and

c. (i) should the termination of the condominium declarations be done pursuant to Section 15.2 of each condominium declaration, that upon the Big Bear Enterprises' acquisition of the Property and the Minimum Required Units, the Buyer shall own a sufficient number of units to unilaterally vote to approve the proposed termination of each of the three (3) condominiums and the related

26

condominium declarations pursuant to Section 15.2 of each condominium declaration and thereby have the purchase option to set forth in Section 15.2 of each condominium declaration to acquire any third party units and then terminate the applicable condominium declaration or (ii) upon the Buyer's acquisition of the Property and the condominium units being purchased in connection with Closing, the Buyer shall be entitled to unilaterally terminate each of the three (3) condominiums and the related condominium declarations pursuant to other legal or equitable grounds.

70.     This Court retains sole and exclusive personal and subject matter jurisdiction over the parties and the subject matter of the Sale to: (a) enforce, implement and interpret  the terms and provisions of: (i) the Sale Motion, (ii) the Sale, (iii) this Final Sale Order and (iv) any agreements arising from or related to the Sale, including, but not limited to, the Purchase Agreement; and (b) resolve any disputes, controversies or claims arising from, or relating to: (i) the Sale Motion, (ii) the Sale, (iii) this Final Sale Order, and (iv) any agreements arising from or related to the Sale, including, but not limited to, the Purchase Agreement.

71.     Notwithstanding Bankruptcy Rules 6004(h), 6006 and 7062, this Order shall be effective and enforceable immediately upon its entry and its provisions shall be self-executing. The Trustee and the Buyer are free to close under the Purchase Agreement at any time, subject to the express terms of the Purchase Agreement. If the Trustee and the Buyer close under the Purchase Agreement, the Trustee and the Buyer shall be deemed to be acting in "good faith" and the Buyer shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Purchase Agreement.

###

27

**Submitted by:**

Jaime B. Leggett, Esq.

BAST AMRON LLP

*Counsel to the Chapter 11 Trustee,*
*Daniel J. Stermer*

One Southeast Third Avenue, Suite 2410

Miami, Florida 33131

Telephone: (305) 379-7904

Email: jleggett@bastamron.com

Copy furnished to:

Jaime B. Leggett, Esq.

Attorney Jaime B. Leggett shall serve copies of this Order on all interested parties and file a certificate of service.